We'll start today with the Council of Motion for Bail Pending Appeal in United States v. DiNapoli 20-48. Good morning. May it please the Court, my name is Roger Bennett-Adler. I represent the defendant appellant Joseph DiNapoli. This case comes up as I believe this Court's first instance of dealing with a motion for which has caused the state of New York in which we sit to be declared a state of health emergency. I'm asking the Court to grant my motion to stay execution of judgment to the limited extent of allowing Ms. DiNapoli to be freed from the Metropolitan Correction Center, which has been in lockdown, depriving counsel of the right to see their clients. It's understaffed. It's been the subject of an Inspector General, scathing Inspector General report. The lockdown was due to the report of a gun that was eventually found, is that right? It is. Is that over now? I read in media accounts that the gun was found along with a lot of contraband. Yes, Judge. Okay, thank you. But it has been, I believe, continued now because of the virus, but Your Honor is correct. What I'm asking for is bail pending appeal to the extent of home confinement. I'm not asking for my client to be allowed out other than the troika of reasons that clients are allowed out on home confinement. One, to go to medical appointments, two, for religious purposes, and three, to meet with their lawyers, in this case, me. The statute that governs this, so tell us how these circumstances would bring you within the statute. Yes, under Randall, I have to demonstrate that there are arguable points on appeal. I believe that there are three. I've advanced them, and they consist of the following, one, that Judge Seibel imposed a sentence both contrary to the plea agreement and more significantly 18 U.S.C. 3553A. It was a sentence that was harsh and cruel for a defendant who has chronic health conditions, who's almost 85 years old, to be in a system which cannot provide for his medical care. She acknowledged explicitly in her sentencing remarks that she knew that he could not receive the same medical treatment in the MCC under the Bureau of Prisons that he could on the outside. I say that is Prime A, Exhibit A of a cruel sentence, sentencing somebody to a situation where they're going to. I agree to a recommended sentence of 37 to 46 months, right? That is correct. So then probably you're likely to receive, even if these arguments are meritorious, a sentence of at least 37 months. Well, it's not so much the duration. It's the venue. There's nothing inconsistent with saying 37 months is appropriate. Now the question is where does it get served? Does it get served in the Bureau of Prisons? Does it get served in home confinement? Let me also call the Court's attention most respectfully. I'm sorry. Are you suggesting that your argument is that whatever sentence he receives, it could only constitutionally be applied to home confinement? I'm saying that the sentence of a geriatric defendant with these chronic health conditions to be served other than at home confinement is a violation of the Eighth Amendment. It is cruel. It is unusual. And it violates 3553A. Yes, that's my position. I didn't understand you to make that argument to the district court. Did I miss something? Well, I wasn't the lawyer in the district court, but in that— I know, but I'm asking. That argument was not made to Judge Seibel, was it? Well, the argument was made that a lesser sentence should be imposed. Let me just call the Court— I understand that, but there was not an argument made to Judge Seibel that only home confinement would be a constitutional sentence. No. Okay. No. All I wanted to add— You would have to show plain error on it. Right. And the other thing I wanted to just point out, simply to point out a decision subsequent to my filing my reply submission, is that on February 26th, the United States Supreme Court decided Hogan, H-O-L-G-Y-N, Hernandez versus the United States, in which the court, in an opinion by Justice Breyer, reversed the Circuit Court of Appeals, finding that the record was sufficient to demonstrate a violation of 3553A. So I simply call this Court's attention. I only found this out last night in connection with my preparation for oral argument. Is that case analogous to your client's? No. It's obviously distinguishable, but it's the most recent 3553A case I could find, and because it's the United States Supreme Court, I just wanted to share that information. I simply ask the Court to grant this limited application for geriatric relief, mindful that we're in a health emergency. Thank you for your time. Thank you. Good morning, Your Honors, and may it please the Court. My name is Hagan Scotton. I'm an assistant United States attorney in the Southern District of New York. I represent the government here, and I represent the government in the district court. Because Mr. DiNapoli has not identified any arguments that result in a sentence either of no jail time or of less jail time, it will take this Court to consider his appeal. His motion should be denied. But what about the argument that we're in a different situation now vis-à-vis the MCC than we were when the sentence was imposed, namely the lockdown situation, the health crisis? What's your response to that? Well, there's several points, Your Honor. I think, first, Your Honor was correct that the lockdown was due to a firearm. It doesn't apply specifically to the district. There's no lockdown anymore? My understanding, although obviously I don't speak for the Bureau of Prisons, but they try to keep us up to date, my understanding is as of tomorrow, they'll be back to full visiting hours. There's no lockdown now. They're sort of getting back online, is my understanding. With respect to health, I don't think the coronavirus outbreak really changes anything. That would sort of prove too much. We can't stop having incarceration in this country because there's been an outbreak of a flu-like disease. I think that the idea is that he, given his medical condition and his age, is particularly vulnerable. So if that's the case, then the remedy is one that should have occurred already and would have but for Mr. DiNapoli, which is he should be serving his time in a medical facility, which is where Judge Seibel designated him at his request at sentencing on December 19th. Judge Seibel recommended that he be sent to a Bureau of Prisons medical facility. The Bureau of Prisons agreed with that, and he is designated to go to Butner, which is one of those— What about direct surrender? So he asked for direct surrender and was granted direct surrender. When he was asked for direct surrender, Judge Seibel told him very clearly, if you do not get a designation by February 7th, please contact me and contact the government so we can look into that. Apparently, he did not get that designation in time, but he did not choose to contact either the district court or the government, instead trying to stay out of prison. That's all worth knowing, but we are now at March 10th. Has he—he has been designated for Butner? He has been designated. I spoke with the marshals yesterday, and it's unclear exactly when a flight will be leaving, but their estimate is next week. Well, that would be if he went in marshals' custody, but if he were to direct surrender, how soon could he do that? He is already in prison, Your Honor. He's in? The stay was denied, I believe, by Judge Parker and a single judge consideration before coming to this panel. So he's in now, waiting to go to Butner. I should also note— I'm sorry. So when may that happen? What's the soonest that that might happen? My understanding is the soonest it may happen is next week, Your Honor. Next week. I should also note that at his sentencing, Mr. DiNapoli argued all these health conditions. He did not point to any specific condition that could not be treated in the prison, nor has he now. After these arguments did not get him the sentence he wanted, and he did receive, however, the designation or at least the recommendation from the district court, on December 23rd, he filed a letter in the district court saying, in essence, Judge, I actually don't need to go to a medical facility. I will be fine so long as I have my medications. I would rather be designated to a facility in the tri-state area so that my family can visit me. And I think Judge Seibel very reasonably said this, as she put it, ill behooves a defendant who tried to rely on his health to get a lower sentence, and having not succeeded in that, now just wants to be near home to see his family. Perfectly reasonable to want to be near your home and see your family. But I think all of these things tend to call into question the gravity of Mr. DiNapoli's health ailments and the necessity to do something extraordinary to benefit him. Thank you, Your Honor. Thank you very much. We'll reserve the decision and we'll turn